case number 157094. Mr. Lippman, you want to reserve five minutes for rebuttal? May it please the court, Mark Lippman representing Freddie Mathis. As the court may well know, I believe that the circuit made a wrong turn with Rezo and just kept going without really much careful analysis of what effect it would have on the VA system. What effect has it had? You're going to argue that or you should be arguing that something has appeared subsequent to Rezo that would motivate us to reconsider it. What's the effect then? Two answers to that question. One is the reason is it was a wrongly decided case and the effect is really hard to say because it's such an insidious doctrine. I think an argument that it was wrongly decided is not a winning argument. You're going to have to show more than that. But like I said, one is it quits the burden. In other words, it creates an adversarial procedure that heavily burdens claimants that aren't represented by attorneys, which is most of the claimants. What's the VA supposed to do? So in this particular case, I could see, now these facts jump out at you. Maybe you say, well, you need a pulmonologist for this. But was there a request for a pulmonologist? I mean, there was no objection to the examiner. But that assumes the argument that the burden is on them to make an adequate, to get a competent expert. And so the question is, why is that so objectionable? Why is it so wrong for the default rule to be that the VA should be presumed to be picking a doctor that's competent to do the examination for a particular veteran for a particular affliction? And then if the veteran sees the doctor and realizes that this is the wrong doctor, then the veteran can say, wait a second. This is a generalist, and for my particular condition, I really ought to be examined by a specialist. What's wrong with that kind of orderly process and organization of the process? Yeah, a lot is wrong with that. First thing, from a jurisprudential point of view, if you're alleging a fact, and the VA is alleging that we provide competent examiners, it's their burden of proof. I mean, that's how basic jurisprudence works. You don't prove a negative. And that's the very reason there's a presumption of competency, because if you don't have it, then it would be falling on them. The second of all is... Do you get experts from Hopkins or the Cleveland Clinic every time if there's an alleged medical problem that is beyond something that you would normally have on a day-to-day basis? I'm just not sure what they're supposed to do. They're supposed to give just some showing, some showing, like what 702 requires, which is a liberal standard in the civil side, and which Nia Rodriguez adopted as the law for VA. I mean, you can't get around that question. Now, let's say a veteran says, I object to the competency of this doctor. So what does the VA do? I mean, you don't get around the difficult question, or I don't see it as a difficult question, but the more complicated question by shifting it to the veteran. The only reason it's not an issue is because you're taking advantage of unsophisticated, vulnerable claimants who don't have a clue about the law, don't know what waiver means. That's the only reason why it's such a convenient... You're not seeing it that much, and that's why there's no transparency or anything on the record. It's not so much a clue about the law. It's more of a clue about medicine. So I guess my question is, I mean, I've got an internist who I think would be competent to diagnose almost anything. I don't need to go to a pulmonologist for this question if that's my internist. So why is it that the VA has to say in advance that a specialist should be involved when... Well, you may not need a specialist. I never said that a specialist was required. I just said somebody with some experience. So if they said, well, I'm not a specialist, I'm not a pulmonologist, but I've handled respiratory illnesses for a while, I've done VA exams, just to show that it's just not pure guesswork like this doctor was. I mean, I would see that would be the very least, and it's a big problem. Why has this court seen so many cases, I believe it's four published cases, on the presumption of competency? Because it hurts. It's a big problem. And I don't think that just sweeping it under the table and saying, well, you could have raised it is a satisfactory answer to what should be a claimant-friendly system. I mean, I really don't get it. basis or information upon which to raise it. So if a veteran simply says, I doubt that the physician is competent, it seems to me that the VA is in a very good position to say, well, show me. How do you know? And the veteran doesn't have the information, the VA does. That seems to me to be one of your concerns. Yeah, but how does a veteran know that he even has the right to have a competent VA exam? Well, I mean, couldn't there be a situation in which the veteran sees the report and says, this doesn't make any sense, and then questions whether or not? You can look at it, but the VA is a more sophisticated body. I mean, why put the burden on the veteran to ensure it's just a baseline level of competency? Where else do you see this pleading and proof requirement? What other area of VA law do you see it? It doesn't. You don't. Well, I'm not unsympathetic to the arguments that you're making, and I'm certainly not unsympathetic to the fact that I don't see how this arises out of presumption of regularity. What I'm concerned about is that I don't know how the VA could operate under an alternative rule, and you're not giving me practical results. Okay, and I apologize for that. The VA has not argued that it doesn't have the resources for enough specialists, and I'm not saying you need a specialist to maintain a minimum level of competency, but if you look at page 21 of their brief, it says, Moreover, just because the VA often requests medical opinions from general practitioners does not mean that a specialist opinion is not available when warranted. Mr. Mathis overlooks that the adjudication process includes multiple opportunities for VA to obtain a specialist opinion, and then goes on to cite a litany of provisions. And don't forget, they also have at their resource the QTC, which is an independent contracting agency. If, in fact, they don't have any available VA examiners, that would fit. You're not challenging the competency of the medical experts that are picked. It seems to me you're challenging that the veteran doesn't have any basis upon which to determine whether the expert or the doctor is competent or not. Well, it all comes down to, Your Honor, who has the burden of proof. I mean, and my feeling is... Well, correct, and right now the burden is on the veteran. Right, and that shouldn't be... And what I've been trying to get you to the point is that how can the veteran meet that burden if he doesn't have any information? Well, I assume that's in my favor. Do you agree with that, that the veteran is unable to meet its burden because the veteran doesn't have the information upon which to make the challenge to begin with? That's true, too. I mean, there is the accessibility of the information disparity. I mean, it seems like a natural. The VA has all that for their employees. They could easily find out the experience. Right, so they attach a CV. Okay. And it shows that he has graduated from medical school. He's had years of training. He's had years of practice. Then what? But are they then, in every single case, supposed to then provide a detailed analysis of what level of experience they've had with the particular symptoms? The best way I can say it is this, that if you look on the civil side, because it's a similar issue that comes up, it's a very liberal standard. And I can't give you a one size fits all. It really depends on the complexity of the issue. I mean, there are cardiovascular diseases, and then there are really rare cardiovascular diseases, so it has some play there. And I think only the VA has the sophistication to understand that. I mean, the veteran looks to the VA as a paternalistic institution, not as an adversary trying to get evidence they don't have. And then on Baskin, they say not only do you raise it and get the evidence, but you've got to point to the prior fact exactly what are the deficiencies in that exam. Just to follow up on Judge O'Malley's question, I guess your proposed rule is to flip the default rule to go the other way. And so for every time there's a medical examination done for a veteran to figure out veteran's benefits, the medical examiner will not only write a report, but also write a paragraph saying this is my relevant body of work. Well, you know, we need some help from you, so don't do this. Tell us what you want so we can have something concrete to understand what to work with here. For example, if I have an orthopedic disability, I would say it's per se conclusive evidence that if you have a neurologist or an orthopedist, they're an expert. So any specialist would just knock out that issue entirely. But if you want to go with a more generalist, I'd like to see them explain either a CV or I've even cited the cases where they've done it informally. But I think it would be just good on the DBQs, they say, you know, what are your credentials? It would just be very informal. You could say, I'm a neurologist, I'm a board certified. I've done, you know, if he's a general practitioner, like this. Well, I've treated patients frequently in my practice for respiratory illnesses. I've dealt with sarcoidosis disease. So I'm not saying an essay, just something, one or a sentence. Just so he's in the ballpark, he or she is in the ballpark. That's all I'm asking. I would suggest you give us a more detailed answer than that. Otherwise, what I see is in the future, you're going to be back here and challenging the sufficiency of the CV. But look at it, can I answer it this way? Let's say that we put the burden on the veteran. So the veteran, they've got it, they're smart. You've got some smart veterans and they're starting to raise and say, I think it's incompetent. And so the VA's got to come up with a showing now, right? He says they're incompetent. So show me where the competency is. So they give three years of this. You still have that issue. The problem is that can happen right now. Under the status quo, the veteran can ask, can allege or raise the competency of the expert or the doctor that's been assigned to them. It's possible. Right. It's possible. But the question is, why haven't you been seeing that? Because the VA knows that you're dealing with unsophisticated, vulnerable veterans who just don't have a clue. They don't even, and I deal with the service officers all the time. They don't even read the veteran court decisions. They wouldn't know what, if you mention Rizzo or if you mention Cox. So to move this along, what is it that the VA should be doing? Let's say we buy your argument. Okay. And what is it now that the VA should be doing in order to inform the veteran or to give the veteran? If what you're saying is true, the veteran's not even going to read that. Now, what I'm saying is, if you're looking for the ideal solution, the one I propose, if you've looked at DBQs, and I've cited to it, they go through a whole list of different aspects. If you just put a little part there saying, please indicate your experience, your education or experience, any of those, and in fact, it's interesting because if you look at the last page of the appendix, page 63, it says some DBQs require a specialist to complete the examination. The DBQ will identify specialist requirements. I read that as that they want to see, if you're asking for a specialist, we want to know what it is. So already, it's already part of the system. So to me, it's an easy fix. They have the resources. They didn't argue otherwise. What's the fix? You still haven't answered the question. Apologize. What's the fix? The fix is to put a little box, a little questionnaire saying, what is your education, training or experience or anything similar that you feel helps you or would qualify you to perform this particular disability evaluation. If you look at the DBQs, it would be helpful to look at a DBQ, which I've cited to get the whole comprehensive questions they have to answer. And to have one more, just to make sure we're not talking about guesswork. Thank you for answering the question. Let me ask you this question. If the veteran is not reading all this other information, as you said, why would the veteran read this and on that basis conclude that this doctor is not qualified to render this examination? The veteran generally does not read all that. It's up to the VA to ensure the integrity of its VA disability evaluation system. It's not for disabled veterans to keep the VA honest. I guess what I'm asking is, I understand the fix now, but explain how the fix fixes the problem. For example, in this case, if that question were put to him, you have a family practice, what education, what training or experience do you have in respiratory illness or sarcoidosis, I think he would have said none. That would have fixed the problem in a hurry. He obviously didn't know what he was doing. You're way past your time. We'll give you three minutes for a report. Okay, I appreciate it. Good morning, Your Honors. May it please the Court. He did tell us that we as a panel can't change the law, but that's obviously not what he's asking us to do. So you can ignore that whole part of the argument. He's asking us to just tee it up for en banc. I think that's what he's asking us to do. We can skip past the precedent here that is binding. I think we concur on that. The question that's come up today is, what does he need to show? Is there something that has come up since Rizzo that demonstrates that it's wrong? To answer your question, Your Honor, no, nothing. Mr. Mathis simply disagrees with Rizzo, which is that it had been decided differently back in 2009. So how does this work in practice? The Board takes a look at this, and I see these DBQs, and it says the Board has the right to say you need a specialist. Correct. But does the Board affirmatively examine those things? Well, Or only if the veteran says, I think I need a specialist. I think that even can come up even before that point, Your Honor. If you're asking how does an individual appear before a specialist, there are multiple opportunities to obtain a specialist. Right, but the individual is not allowed to be part of that, and the RO is not allowed to require a specialist. The RO can require a specialist. It says right here that in the absence of a BVA remand, ROs may not designate qualification requirements for a specialist. Well, on page 21 of our brief, M21-1, Part 3, Subpart 4, which is JA62, which is a lot easier to say, specialist examinations or opinions and other conditions can be requested by certain RO employees. But this goes even back even before that. That jive with the DBQ I just read you that said they can't. Well, there's certainly a preference to use specialists only in certain cases, Your Honor, but the Veterans Benefits Administration, which is the part of VA, which adjudicates the claim initially, requests exams from the VHA, which is the Veterans Health Administration. Since RISD was decided, the Veterans Administration has issued a directive that general practitioners should be employed as much as possible, correct? Yes, I believe that was afterwards. So maybe that's a circumstance that's happened after RISD that would compel us to want to take a look at this again. So if a veteran doesn't raise a competency of his medical examiner before the board, then the Court of Appeals says we can't hear the appeal. And we've said that too. We can't hear the appeal either. The veteran's got to raise a competency of the medical examiner before the board. Correct. And as far as I understand the petitioner's case, is that the veteran doesn't have a basis, doesn't have the information on which to say, I challenge the competency of my examiner because there's nothing there. And it seems like they're saying, give us a resume, at least a little CV, a paragraph, something where we can look at that and make that initial decision. What's wrong with that? Why shouldn't the Veterans Administration, you've got all the information, you know the background of the doctors that you hire, whether they're inside or outside, why not say, you know, it seems to me to be a really easy fix to say, give us a little bit of your background and attach it to a report under Exhibit A. And that seems to resolve to me to be a really significant due process issue that's been raised here before us today. Well, Your Honor, as this panel was discussing previously with opposing counsel, that isn't an easy fix, providing a CV. In this case, Dr. Dudick was a general practitioner. Providing a CV would demonstrate that. Mr. Mathis says in the last statement before sitting down here, that if a CV was provided, information provided, it would show that there was pure speculation on the part of Dr. Dudick. What Mr. Mathis is actually arguing is something that Your Honor noted, something tailored to every single case, saying their exact experience with lung conditions, for instance, or heart conditions, or whatever it is. A CV isn't going to cut the mustard in this situation, Your Honor. But that's besides the point, because certainly, as you noted earlier, a veteran can get the ball rolling on this and simply ask for a CV, ask for qualifications, just like happened in the Bastion case before this court, and the Knorr case. I'm not sure you're answering the question. I guess the question really is, why is it hard for the VA or for the medical examiners to write inside of one little box on the DBQ? I have experience with respiratory illnesses. I've been practicing as a doctor for 15 years, and although I'm a generalist, I have experience with respiratory illnesses, period. Some kind of clue, just so that Mr. Mathis knows that the person examining him isn't a dentist. What's so hard about that from an administrative point of view? There's nothing hard about writing a couple of sentences, but, Your Honor, it would have to be tailored to every single case. It would have to probably be extended beyond this simple case of medical examiners. Why would it stop here? We're not going to use a presumption of regularity for the selection of medical examiners. What about the selections of the ratings officials? Are they going to have to provide their qualifications when saying, well, I give this person a 30% rating? Well, the question is, was that person competent then to provide a 30% rating? I think there's a vast difference between an administrative bureaucrat rendering an administrative decision on level of disability as opposed to medical opinion. I would disagree with where the presumption is here, Your Honor. The presumption is not with the actual job title, as this Court has said in parts, with the actual doctor, with his job title. The presumption lies with the individual, the VHA, who selected that doctor. That's where the presumption of regularity attached. So it is the same administrative task of selecting the individual doctor. Presumably when the doctor is selected by the VA, they do it on the basis. They're not just selecting anybody, dentists, for example, correct? They're reviewing some information. If you're asking about qualifications and certifications for these individual doctors, these aren't people off the street, Your Honor. They are people who have to have certain training to be VA doctors, to keep certified as VA doctors. And then we have individuals at VHA whose job it is to select doctors for these compensation and pension plans. At that point, that's where the presumption is attaching. Maybe part of the problem is that bad facts make bad law. But you have some bad facts here. Having presided over a lot of asbestosis exposure cases and a lot of cigarette cases, I know that every defendant in an asbestosis case says, well, he also smoked. And every defendant in a smoking case says, well, he also was exposed to asbestosis. And it is a very, very detailed, careful analysis, very sophisticated, complex analysis that has to go on to determine which is the most likely cause. And what you have here is an opinion that just says, yeah, he smoked a lot. I think it's more likely his smoking. If there was not much analysis, he had a lot of exposure to asbestos. I would respectfully disagree with Your Honor's recitation of the facts here. We're looking at the board opinion, which is JA, I'd say starting around 55 to around 59, goes heavily into the facts here, Your Honor, what was actually needed to be shown. Now, again, we're getting into the facts, and there is no jurisdiction of this court to review the actual findings of no sarcoidosis, a service connection for sarcoidosis in this case. I understand that, but if part of your response to the question of whether there should be a change is that it's too complicated or there won't be a practical difference, I think it's fair for us to look at the practical side of this case. Practically, a veteran can always challenge the adequacy of the decision. On what basis? If a veteran says, I challenge the adequacy of my medical examiner, well, it seems to me the VA is going to say, well, on what basis? You have no argument. I think we're talking at this point of the adequacy of the actual medical exam itself. Judge O'Malley was concerned. He says, I have a very unique disease, and you've assigned a nurse to examine me. Is that all he has to say, it's a nurse? Well, you know, in parts, Your Honor, the case did say that there would have to be an argument that all nurse practitioners, for instance, are not qualified to give an opinion or this nurse practitioner in general, this specific nurse practitioner is not qualified for. Bastian did say that there needs to be a because. It's not simply this individual isn't competent. And that's Bob's point. There is a because, and it seems to me the veteran doesn't have the basis, the information available to them to make the because. Well, not yet. But we are certainly, as you noted, the status quo currently fixes the problem because right now the veteran can say, I would like to see a CV. I would like to see qualifications. Why didn't I meet with a specialist? At that point, the VA will provide information or at least say reasons and basis why not providing information. And then the veteran can use that information provided by the VA to formulate a because if a because actually exists. As this court has previously said, just receiving a CV isn't necessarily enough to lodge an objection because once you get that CV, you might say, oh, wow, this guy actually is qualified to hear my medical exam. That's why I, you know, so there won't actually be an objection in every single case where somebody asks for a CV. But certainly the status quo as it is now, once somebody needs to ask for a CV or qualifications, looking at Bastian, looking at Noor, it appears that they receive these qualifications. Losing my voice. Excuse me. In situations like Noor where the doctor also says something along the lines of a personal limitation, there's more clues that something is wrong when it appears irregular. It doesn't attach. If the veteran says, I want to see the qualifications of the nurse practitioner, that's all they have to say and you're saying the burden shifts to the VA to supply that information? Or at least say why they were not supplying in that situation, reasons and basis. Doesn't the veteran have to do more than that? To actually object, yes. To lodge an objection under Bastian, you need to do more than just ask. But once they get the ball rolling by asking originally. I guess that's my point. There's no information there upon which to base the ask. The veteran can't say, I don't think the nurse practitioner is competent because she barely got out of law school last year. I mean, medical school. Or nursing school, rather. She got out of nursing school last year. I mean, the veteran doesn't even have that information. Which the VA will probably reveal. Yes. Basically, what it is right now, the status quo is a two-step process. It's not a single-step process, which I think is the concern you're voicing right now. You ask for the qualifications, receive the qualifications, and then lodge an objection. If the qualifications show there's some reason to object. So if the veteran asks, just simply says, I'd like to see the qualifications, and the VA will supply it? Well, according to Bastian and Noor, that is what's occurring. I don't have information on every single instance in front of me, Your Honor. And I'm not aware of any policy that says that. But it has happened in one case before this court, and at least one that I can think of before the Veterans Court. But we could say, in an opinion, it's our understanding that the VA's current practices, every single time a veteran requests for information about the medical examiner, the VA does supply it? I'm stepping back from that, Your Honor. I want to be very clear. I don't know of any policy. I don't know it happens in every case. What I'm saying is in Bastian and Noor, it certainly happens. Well, what would prevent it from happening? I can't think of an example off the top of my head why they would not provide a CV in a certain case. But I guess getting to Judge Reina's point, it's a black box from the veteran's point of view. He has no idea if he's got a respiratory illness and it's a dentist that's next to him examining him, unless he knows that information first. He doesn't even know to ask for the CV of the dentist and then realize, oh, my gosh, I've got a tooth expert looking at my lungs. Well, certainly in your example, Your Honor, I think that's really akin to the Wise case. In the Wise case, we had a situation, and that's before the Veterans Court, where a situation where we had— Well, we had nothing in the medical examination report to indicate that the medical examiner is a dentist, in my hypothetical. And so the veteran would have no idea even to challenge the competency of the examiner or even ask for the medical background. Well, I think the likely scenario of that case is the opinion would probably be inadequate on its face if it was somebody so horribly not qualified, Your Honor. But one way to look at this is that the only cases we see here are cases where the veteran disagrees. There are many cases every day where a medical examiner comes back with a positive decision for a veteran, and they walk away with the veteran's benefits that they believe they deserve. In those situations, the RO and everybody else who's looking at this is also considering that the presumption of competency applies to the specific examiner. So it does help veterans insert in cases, Your Honor. So there is a positive side to this. I'm not sure what you're saying. Are you saying there are times where incompetent medical examiners are granting benefits to veterans, and so, therefore, we should take that into account? No, Your Honor. I think what I'm saying is that there are situations where a veteran receives a positive decision that an adjudicator might look at and say, well, I don't know if I would have decided that, but they stick to the competence of the actual medical examiner. I don't know of any specific cases where it's come up later, whether it's been pro-veteran or anti-veteran, where it's turned out post-fact, post hoc, excuse me, that a dentist looked at something, a foot condition or so on, something so absurd as that situation. I'm unaware of any situations. It hasn't been cited by appellate or myself. What I am certain of, Your Honor, is that at any point here, the veteran can challenge an adequacy of decision, and that's exactly what happened here. You said in your red brief at one point that they can challenge it even at the Veterans Court, but that's not actually true, is it? I'm sorry, you're challenging the adequacy? Yes. Well, there could be a waiver issue. I'm sure you would claim waivers. Right, right. Yeah, I misspoke there. It's at the board you have to challenge. In this case, there was a challenge to the adequacy saying that there was a chronic condition. If you look at page 59 of the joint appendix, the board found that there was no chronic condition here based upon the standards, which are different than the standards of asbestos litigation, Your Honor, proving whether there was a chronic condition that stemmed from service. The analysis is all on page 55 to 59 of the joint appendix, which is the board opinion. So the adequacy here, even checking to see whether there was chronic sarcoidosis, that was already resolved factually. Mr. Mathis, in his brief, argues the opposite, saying that it was inadequate based on the exact opposite of the finding of the board. So it's already been resolved whether there's a factual error. Just to be clear, if a veteran was to say, I have a chronic disease, I have a rare disease, and my doctor was a general practitioner, is that enough to have the VA show the competency or provide additional information? Before the board, if that's what they say, they make the argument that I have a rare disease and I was seen by a generalist, so that generalist is not qualified, Your Honor. Is that the objection? Well, if the VA is not going to treat that as a swapping of the burden, then they probably need to provide reasons and bases. I think that that could be a logical objection on the part of the... If they object, then what happens? Will the board provide the information? Or will the board simply say, you haven't given me a reason to give you the information? There are situations where they could say you haven't given me a reason. For instance, somebody could be basing it on prejudice. And that's what we have today, right? We have this presumption of regularity. We're not going to give you a reason because we presume that any doctor we assign is competent and it's done within the normal course of business here, so we don't owe you anything. That's what's happening, isn't it? Well, the record doesn't show what's happening on a daily basis here, Your Honor. If somebody comes up and says, I believe my doctor was not qualified because of some prejudice they state, because they didn't like the doctor in particular because of their race or gender or something along those lines, I could see a situation where the VA says, well, we're not going to respond to that. We're going to provide reasons and bases saying that that's just a prejudice. But if they come up with a specific objection saying, hey, you sent me to a general practitioner and I'm suffering from a hearing condition, an eye condition, and I think that that person wasn't qualified, at that point the VA has at least an obligation to say why they don't think the burden has shifted. But I think at that point it's probably a logical objection that has actually been raised by the individual and the burden shifts, and it's the VA's obligation at that point to show the qualifications. At that point they should be writing the paragraph discussing what the qualifications of that individual general practitioner. Do they know about hearing? Do they know about vision? Okay. Thank you, Your Honor. I let you go over because I let Mr. Lippman go over, but we need to move on. All right, Mr. Lippman, three minutes. A couple quick points. One, you were saying the government mentioned that if we don't have a presumption of competency for medical experts or medical things, then it's going to cut all across the board for rating specialists and whatnot. If you look at pages 14 and 15 of my reply brief, I respond to that. It's clear that VA physicians and all physicians assume the role of a witness when they are used in the VA system, and as witnesses they have to show some level of competency, whereas a rating specialist or some other member of the adjudicator body does not perform that role. Are there any questions at all? Do you agree that RO personnel can ask for a specialist? My understanding is that they can request it, but they can't require it. I've dealt with a lot of decision review officers which are sort of rating specialists, but on an appellate level, and they say that it's really we can ask for it, but whether we get it, it's out of our hands. Part of the problem here is just there's no transparency in this whole process. There's so much mystery, and I'd like to see just a little bit of visibility to the process. If there's no more questions. All right, thank you. Cases will be submitted. This court is adjourned. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m.